# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## COVINGTON DIVISION – CIVIL

| | |
|---|---|
| **JOSEPH FISCHER** | : Case No. |
| c/o Christopher Wiest, Esq. | |
| 25 Town Center Blvd., Ste. 104 | : |
| Crestview Hills, KY 41017 | |
| | : |
| and | |
| | : |
| **FISCHER FOR SUPREME COURT** | |
| **COMMITTEE** | : |
| c/o Christopher Wiest, Esq. | |
| 25 Town Center Blvd., Ste. 104 | : |
| Crestview Hills, KY 41017 | |
| | : |
|     Plaintiffs | |
| v. | : |
| | |
| Hon. **KAREN A. THOMAS**, | : |
|     in her official capacity | |
|     as Member, Judicial Conduct Commission: | |
| Serve: Daniel Cameron, Attorney General | |
|       700 Capitol Avenue, Suite 118 | : |
|       Frankfort, Kentucky 40601 | |
| | : |
| AND | |
| | : |
| Hon. **R. MICHAEL SULLIVAN** | |
|     in his official capacity | : |
|     as Member, Judicial Conduct | |
|     Commission | : |
| Serve: Daniel Cameron, Attorney General | |
|       700 Capitol Avenue, Suite 118 | : |
|       Frankfort, Kentucky 40601 | |
| | : |
| AND | |
| | : |
| Hon. **EDDY COLEMAN** | |
|     in his official capacity | : |
|     as Member, Judicial Conduct | |
|     Commission | : |
| Serve: Daniel Cameron, Attorney General | |
|       700 Capitol Avenue, Suite 118 | : |
|       Frankfort, Kentucky 40601 | |

|  | : |
|---|---|
| **AND** |  |
|  | : |
| **Hon. JEFF S. TAYLOR** |  |
|     **in his official capacity** | : |
|     **as Member, Judicial Conduct** |  |
|     **Commission** | : |
| **Serve: Daniel Cameron, Attorney General** |  |
|     **700 Capitol Avenue, Suite 118** | : |
|     **Frankfort, Kentucky 40601** |  |
|  | : |
| **AND** |  |
|  | : |
| **Hon. JOE E. ELLIS** |  |
|     **in his official capacity** | : |
|     **as Member, Judicial Conduct** |  |
|     **Commission** | : |
| **Serve: Daniel Cameron, Attorney General** |  |
|     **700 Capitol Avenue, Suite 118** | : |
|     **Frankfort, Kentucky 40601** |  |
|  | : |
| **AND** |  |
|  | : |
| **Hon. JANET LIVELY McCAULEY.** |  |
|     **in her official capacity** | : |
|     **as Member, Judicial Conduct** |  |
|     **Commission** | : |
| **Serve: Daniel Cameron, Attorney General** |  |
|     **700 Capitol Avenue, Suite 118** | : |
|     **Frankfort, Kentucky 40601** |  |
|  | : |
| **AND** |  |
|  | : |
| **JIMMY SHAFFER,** |  |
|     **in her official capacity** | : |
|     **as Executive Secretary, Judicial** |  |
|     **Conduct Commission** | : |
| **Serve: Daniel Cameron, Attorney General** |  |
|     **700 Capitol Avenue, Suite 118** | : |
|     **Frankfort, Kentucky 40601** |  |
|  | : |
|     **Defendants** |  |
|  | : |

## PLAINTIFF'S VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, by and through counsel, for their Complaint, allege as follows:

## INTRODUCTION

1. It is déjà vu all over again. This case is a response to the latest iteration by the Kentucky Judicial Conduct Commission to suppress protected First Amendment speech in the context of a judicial campaign, and in particular the threatened deprivation of Plaintiffs' First Amendment rights by the official capacity Defendants named herein. This action raises a challenge to Rules 4.1(A)(6), Rule 4.1(A)(7), and Rule 4.1(A)(13), in both facial and as-applied challenges.

## PARTIES

2. At all relevant times herein, Plaintiff, Joseph Fischer, was a resident of Campbell County, Kentucky, and was and is a candidate for Kentucky Supreme Court, 6th District for the November, 2022 election, covering counties in Northern Kentucky.

3. Defendants Hon. Karen Thomas, R. Michael Sullivan, Hon. Eddy Coleman, Hon. Jeff S. Taylor, Hon. Joe E. Ellis, and Hon. Janet Lively McCauley are members of the Judicial Conduct Commission ("JCC"), who are all sued in their official capacities. Defendant Jimmy Shaffer is the Executive Secretary of the JCC. The JCC is responsible for, among other things, enforcement of the Kentucky Code of Judicial Conduct, and associated rules, as well as rules for the processing of complaints. The JCC accepts complaints from the public. For the avoidance of doubt, the JCC does actively enforce and threatens to enforce, the Kentucky Code of Judicial Conduct.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction over the claims and causes of action asserted by Plaintiffs in this case is conferred on this Court pursuant to 42 U.S.C. §1983, 42 U.S.C. § 1988, 28 U.S.C. §1331, 28 U.S.C. §1343, 28 U.S.C. §§ 2201 and 2202, and other applicable law.

5. Venue in this district is proper pursuant to 28 U.S.C. §1391 and other applicable law.

6. Venue in this division is appropriate, since all of the deprivations of Plaintiffs' Constitutional Rights occurred and were directed to Campbell County, a Defendant resides in this District and Division, and future deprivations of Plaintiffs' Constitutional Rights are threatened and likely to occur in this division.

## FACTS COMMON TO ALL CLAIMS

7. In 2022, Mr. Fischer was and is a candidate for Kentucky Supreme Court, for the 6th Supreme Court District, which covers a number of Northern Kentucky counties.

8. Mr. Fischer is a lifelong Republican, who has served as a Republican member of the Kentucky House of Representatives for more than two decades. His affiliation with, support of, and alignment with, the Republican party is longstanding and well-known.

9. The Sixth Kentucky Supreme Court District is largely Republican and it is becoming more and more Republican over time.

10. Mr. Fischer's opponent, the incumbent Supreme Court Justice, Justice Michelle Keller, is a lifelong Democrat, was appointed by Democratic Governor Beshear, but who, since her appointment, has changed her registration to independent.

11. Most of Justice Keller's donors are registered Democrats, including prominent Democrats, such as former Governor Steve Beshear and his wife, Jane.[1]

---

[1] See http://kref.ky.gov (last visited 10/3/2022).

12. Almost all of the people endorsing Justice Keller are registered Democrats.[2]

13. Earlier this year, Mr. Fischer inquired of the Judicial Ethics Opinion for certain advice on his campaign activities, including his affiliation with the Republican Party, and that body issued an opinion, JE 130.[3] Among other things, that opinion answered the following question in the negative: "May a judicial campaign committee's advertising include symbols closely associated with a political party in its advertising (i.e., democratic – donkey & republican – elephant)? No." Allegedly doing so would "render hollow" the non-partisan nature of the judicial elections.

14. Mr. Fischer and his campaign have not been shy about his Republican party affiliation, and his campaign materials generally denote: "Joe Fischer for Kentucky Supreme Court --- the Conservative Republican." He and the campaign have never, however, expressly indicated that he is the nominee of the Republican party. And for the avoidance of all doubt, all of his and the campaign's speech has been truthful and accurate. At times, he has utilized the following image, to include an elephant, in his campaign materials:



---

[2] https://www.kellerforkentucky.com/endorsements.html (last visited 10/3/2022).
[3] https://kycourts.gov/Courts/Judicial-Ethics/Judicial%20Ethics%20Opinions/JE_130.pdf (last visited 10/3/2022).

15. In light of JE Opinion JE 130, Mr. Fischer used a general elephant instead of the Republican elephant.[4] But for that opinion, and the JCC's general threat of enforcement, he would have used the Republican Elephant symbol (and still would/will do so but for that threat of enforcement).

16. Mr. Fischer has obtained, and is now using in campaign materials, endorsements from both Kentucky Right to Life and Northern Kentucky Right to Life. He has long involvement with both organizations and, as a sitting state legislator, he sponsored certain pro-life legislation.

17. Those organizations have taken issue with his opponent, Justice Keller, in part for her approval of abortions for out-of-state minors without their parents' knowledge or consent, while she sat on the Kentucky Court of Appeals.[5]

18. For the avoidance of all doubt, Right to Life groups, including Kentucky Right to Life and Northern Kentucky Right to Life, in addition to their endorsements, are actively supporting Mr. Fischer's campaign, including through word-of-mouth endorsements. Equally, right to life supporters have been actively engaged in a sign campaign for candidates that they support, putting up both the candidate's sign and their own "Choose Life" signs with it. An example of this is:

---

[4] See: 
[5] https://www.cincinnati.com/story/news/politics/2014/10/27/abortion-issue-divides-supreme-court-candidates-gop/18000733/ (last visited 10/3/2022).



19. Insofar as these "Choose Life" signs are concerned, Mr. Fischer and his campaign team have not erected them or put them up; supporters of third party Right to Life groups have. That said, Mr. Fischer has not been shy about his endorsements from Kentucky Right to Life or Northern Kentucky Right to Life and shared a photo of one of them on his campaign Facebook page.

20. For the avoidance of all doubt, Mr. Fischer has <u>never</u>, in the course of his campaign, made a promise or pledge to rule a particular way regarding any particular party, particular case, or particular controversy.

21. In fact, when an individual questioned Mr. Fischer on his Facebook about his past and present affiliations with Right to Life groups, this was his response (and is consistent with how he has generally addressed questions about particular cases or parties):


**Miranda Jordan**
I am curious how Joe Fischer would be able to hear any cases regarding Right to Life as his partisan stance is a clear conflict of interest. Aren't judges supposed to be impartial and not prejudge any issue or case?

Like   Reply   1w


✏️ Author
**Fischer for Kentucky Supreme Court**
**Miranda Jordan** Thank you for your question. The best answer comes in the form of another question. If a judge holds a personal moral objection to murder, does that moral objection disqualify the judge from deciding a capital murder case? If the same judge has a personal moral objection to the death penalty, does that objection likewise disqualify the judge? Unless the judge had a personal bias against one of the parties to the case, those sincerely held moral beliefs would not create a legal impediment to the judge applying the facts of the case to the text of the law and imposing the appropriate punishment. The hallmark of impartiality and the rule of law is the judge's commitment to put aside their personal opinions about political issues and decide each individual case based on the law as written.

Like   Reply   1w

22. Mr. Fischer has, however, made general statements about issues, has made broad pledges about his commitment to defending the rule of law and ensuring Kentucky's judicial system effectively serves all citizens of the Commonwealth, has indicated that he will not engage in judicial activism, and has underscored his understanding of the importance of the separation of powers in that it is the duty and responsibility of the legislature to make the laws, the executive to enforce the laws, and the judiciary to interpret the laws.

23. Mr. Fischer has received the endorsement of various county Republican Party Executive Committees (and partisan elected officials) from within the 6th Supreme Court District, and in the context of his campaign has appeared before various community and political groups to speak about his platform and qualifications, including attending certain Republican Party

events on his own behalf,[6] he has not used or sought the endorsements of the Republican Party or partisan elected officials, and he has not used or sought endorsements from the Republican party in his campaign or any of his campaign materials, or in any of his public statements. Mr. Fischer has made general references to his having served two decades in the Kentucky House of Representatives, and it is common knowledge that he was a Republican member of that body.

24. On September 27, 2022, the Kentucky JCC penned a letter to Mr. Fischer. A true and accurate copy of that letter is attached as **Exhibit A**. In it, the JCC observed that it received complaints, it indicated that under SCR 4.170(1) it found that "following consideration and discussion" of the complaints "there is a basis for investigation of a matter" within its jurisdiction, and it directed Mr. Fischer to respond. In other words, that someone lodged a complaint regarding conduct that the JCC determined is a probable violation of the Kentucky Code of Judicial Conduct.

25. More specifically, the JCC's September 27, 2022 letter, made an allegation of a Rule 4.1(A)(6) violation, which provides "a judge or judicial candidate shall not… (6) publicly identify himself or herself as a nominee of a political organization."

26. The JCC thusly interprets Mr. Fischer's usage of signage that indicates that he is "the conservative Republican" and his use of a generic elephant in his campaign materials, to violate that Rule 4.1(A)(6).

---

[6] In the same vein, his opponent, Justice Michelle Keller, has appeared before similar groups. Justice Keller, for instance, has given speeches to Emerge Kentucky, a Democratic Women's candidate incubation organization, and she has likewise appeared at events sponsored by both the Democratic and Republican parties.

9

27. Further, the JCC's September 27, 2022 letter, likewise made an allegation of a Rule 4.1(A)(7) violation, which provides "a judge or judicial candidate shall not… (7) seek, accept, or use endorsements from a political organization;"

28. The JCC thusly interprets Mr. Fischer's usage of signage that indicates that he is "the conservative Republican" and his failure to disavow[7] endorsements he has received (but not sought or himself used) from Republican executive committees to be violative of Rule 4.1(A)(7).

29. Further, the JCC's September 27, 2022 letter, made an allegation of a Rule 4.1(A)(13) violation, which provides "a judge or judicial candidate shall not… (13) in connection with cases, controversies, or issues that are likely to come before the court, make pledges, promises, or commitments that are inconsistent with the impartial* performance of the adjudicative duties of judicial office."

30. The JCC thusly interprets Mr. Fischer's usage of signage that indicates that he is "the conservative Republican," his affiliation with Kentucky Right to Life and Northern Kentucky Right to Life and sharing the fact of their endorsements, and third parties putting up "Choose Life" signs with his campaign signs to be violative of that Rule 4.1(A)(13).

31. On October 3, 2022, the undersigned Counsel sent correspondence to the Kentucky Judicial Conduct Commission.  A true and accurate copy of that letter is attached as **Exhibit B**. Among other things, that correspondence outlined, generally, the speech Mr. Fischer engaged in, in Paragraphs 8 through 23 herein.  It referenced the probable cause finding by the JCC, as to violations it was alleging in light of that conduct, and asked the JCC to outline any additional speech Mr. Fischer engaged in, that the JCC found as a violation, by 4:00 p.m. on

---

[7] This is particularly curious in light of the commentary to the Rule in question that indicates that a candidate does not have to disavow an endorsement to avoid the "accepting" provision.

October 4, 2022. The JCC did not respond, confirming that Paragraphs 8 through 23 herein constituted the basis of the complaints and action by the JCC.

32. At present, Mr. Fischer faces threat of imminent enforcement action by the JCC for this First Amendment protected campaign related speech. Further, if Mr. Fischer is not successful in his present campaign, he intends to run for judicial office again, and again engage in the same speech.

33. However, at the present time, no formal action has been commenced by the JCC, and no formal charges have been filed against Mr. Fischer under S.C.R. 4.180.

34. Thus, no action is "pending" in state court, since no formal charges have been filed.

35. Unless enjoined, all Defendants herein will continue to enforce Rules 4.1(A)(6), 4.1(A)(7), and 4.1(A)(13) in a manner that is in contravention of Plaintiffs' First Amendment Rights.

36. In light of the holdings in *Republic Party of Minnesota v. White*, 536 U.S. 765 (2002), *Carey v. Wolnitzek*, 614 F.3d 189, 203-204 (6th Cir. 2010), and *Winter v. Wolntizek*, 834 F. 3d 681 (6th Cir. 2016), which established that non-partisan candidates have the right to identify any affiliations with political parties including the use of "the conservative Republican," and, as to issues and groups, Mr. Fischer and his campaign can likewise use endorsements of groups such as Kentucky Right to Life and Northern Kentucky Right to Life, and he should not be forced to disavow endorsements received from third parties, and he has the right to state his position on issues. Consequently, the threat of enforcement and/or any future enforcement action would be brought: (i) in bad faith; (ii) solely to harass Mr. Fischer and his campaign; and/or (iii) would be enforcing flagrantly and patently unconstitutional Judicial Conduct Rules.

37. The actions set forth herein have deprived and continue to deprive Plaintiff of his First Amendment rights.

## COUNT I – VIOLATION OF FIRST AMENDMENT

### Part I – As Applied Challenge

38. Plaintiff hereby reincorporates the preceding paragraphs as if fully set forth herein.

39. Plaintiff is a citizen of the United States of America.

40. Plaintiff has a clearly established right under the United States Constitution and its statutes to Freedom of Speech, Association, and Expression and other First Amendment guarantees.

41. Defendants, using their respective offices and acting under color of state law, violated Plaintiff's First Amendment Rights, which deprived Plaintiff, who is a citizen of the United States, of his rights of Free Speech and of Association, as guaranteed under the First Amendment of the U.S. Constitution, which rights are clearly established, and therefore subjected themselves under 42 U.S.C. § 1983, to prospective injunctive relief, and declaratory relief under 28 U.S.C. § 2201.

42. The First Amendment of the U.S. Constitution provides, in relevant part, that "Congress shall make no law ... abridging the freedom of speech..." The First Amendment has been incorporated under the Fourteenth Amendment to apply to the states, including the Commonwealth of Kentucky, under *Gitlow v. New York*, 268 U.S. 652 (1925).

43. Defendants abused the authority of their respective offices and, while acting under color of law and with knowledge of Plaintiff's established rights, used their offices to violate Plaintiff's First Amendment rights.

44. The United States Supreme Court in *Republic Party of Minnesota v. White*, 536 U.S. 765 (2002), which involved a challenge to certain provisions of the Minnesota Judicial Canons, held that free speech challenges involved an application of strict scrutiny.

45. Under the strict-scrutiny test, the state has the burden to prove that the challenged clause is (1) narrowly tailored, to serve (2) a compelling state interest. *Id.* at 775. In order for the state to show that the challenged clause is narrowly tailored, it must demonstrate that it does not "unnecessarily circumscribe protected expression." *Id.*

46. In two other cases, the Sixth Circuit examined judicial speech restrictions. *Carey*, 614 F.3d 189, 203-204; *Winter*, 834 F. 3d 681.

47. During the current election for Supreme Court Justice, Mr. Fischer and his campaign engaged in the speech the Sixth Circuit deemed protected in *Carey* and *Winter*, and they intend to continue to do so. A judicial candidate's qualifications, education, experiences, associations, and memberships are highly relevant in the voters' effort to vet the candidates. Many voters want to become acquainted with candidates' past and present affiliations, associations, and memberships in political organizations like the Democrat and Republican parties, as well as organizations such as right to life organizations.

48. The voters perceive these memberships, affiliations, or associations as indications of the candidates' guiding philosophies and principles that influence judicial decision making. Mr. Fischer truthfully informed the voters about his party affiliation within his campaign materials.

49. Mr. Fischer and his campaign did not falsely indicate that the campaign was partisan, but what he did was identify his values by truthfully acknowledging he is "the Conservative

Republican" to allow the voters to decide what impact, if any, that information should have at the ballot box.

50. Plaintiffs seek declaratory relief, and prospective injunctive relief under 42 U.S.C. 1983 and 28 U.S.C. §§ 2201 and 2202, declaring Rule 4.1(A)(6), Rule 4.1(A)(7), and Rule 4.1(A)(13) unconstitutional, as applied, to the speech and campaign activities set forth in Paragraphs 7 to 32 herein.  Plaintiffs likewise seek a permanent injunction enjoining the enforcement of Rule 4.1(A)(6), Rule 4.1(A)(7), and Rule 4.1(A)(13), as applied to any and/or all of the foregoing scenarios.  Plaintiffs further seek their reasonable attorney fees under 42 U.S.C. § 1988.

Part II – Facial Challenge

51. Plaintiffs hereby reincorporate the preceding paragraphs as if fully set forth herein.

52. In addition to the foregoing, the impermissible applications of the law are substantial when compared against any legitimate sweep of the Rule 4.1(A)(6), Rule 4.1(A)(7), and Rule 4.1(A)(13).

53. Rule 4.1(A)(6), Rule 4.1(A)(7), and Rule 4.1(A)(13) are void for vagueness.  For instance, Rule 4.1(A)(6) does not explain what it means to identify himself or herself as the nominee, but apparently saying "the conservative Republican" is a violation.  It is unclear what other violations there may be, but apparently, expressly indicating that someone is a nominee is not the sole violation.  This is also an end-run by the JCC around the holding in *Winter*, 834 F. 3d 681.  There are also void for vagueness problems with Rule 4.1(A)(7), since the JCC interprets and enforces it in a manner that apparently requires disavowal of third-party endorsements notwithstanding Kentucky Supreme Court commentary to the contrary, and considers the usage of "the conservative Republican" in campaign literature to constitute a

violation. Finally, Rule 4.1(A)(13) is void for vagueness, since it prohibits the discussion of issues, even when those issues are divorced from particular parties or cases.

54. Rule 4.1(A)(6), Rule 4.1(A)(7), and Rule 4.1(A)(13) fail to establish standards that are sufficient to guard against the arbitrary deprivation of liberty interests.

55. A substantial number of instances exist in which Rule 4.1(A)(6), Rule 4.1(A)(7), and Rule 4.1(A)(13) cannot be applied constitutionally. For instance, it is obvious that the JCC believes a violation exists to express that a candidate is "the conservative Republican."

56. Plaintiffs further seek declaratory relief, and prospective injunctive relief under 42 U.S.C. 1983 and 28 U.S.C. §§ 2201 and 2202, declaring Rule 4.1(A)(6), Rule 4.1(A)(7), and Rule 4.1(A)(13), as interpreted by the JCC, unconstitutional on their face; Plaintiffs likewise seek a permanent injunction enjoining the enforcement of these provisions. Plaintiffs further seek their reasonable attorney fees under 42 U.S.C. § 1988.

## Part III – Emergency Injunctive Relief

57. Plaintiffs hereby reincorporate the preceding paragraphs as if fully set forth herein.

58. Mr. Fischer seeks emergency relief, including a preliminary injunction or temporary restraining order, so that he can engage in the following protected speech between now and the November 8, 2022 general election, which protected speech is otherwise being chilled from Defendants' threat of enforcement against him: (i) to permit him to truthfully say that he is "the conservative Republican;" (ii) to permit him to utilize the Republican party's elephant symbol to denote his affiliation with that party, JE 130 notwithstanding; (iii) to permit him to use and advertise his endorsements from Kentucky Right to Life and Northern Kentucky Right to Life; (iv) to permit general references to Mr. Fischer having served two decades in the Kentucky House of Representatives; (v) to permit Mr. Fischer to continue to

indicate that he is committed to defending the rule of law, ensuring Kentucky's judicial system effectively serves all citizens of the Commonwealth, that he will not engage in judicial activism, and to continue to underscore his understanding of the importance of the separation of powers in that it is the duty and responsibility of the legislature to make the laws, the executive to enforce the laws, and the judiciary to interpret the laws; and (vi) to not require Mr. Fischer to disavow endorsements he has received from Republican Party executive committees.

59. Mr. Fischer likewise seeks restraining order relief to prevent the initiation of a formal complaint over the foregoing protected First Amendment speech.

**WHEREFORE**, Plaintiffs demand judgment as prayed for, including:

A. That this Court issue a declaration that Rule 4.1(A)(6), Rule 4.1(A)(7), and Rule 4.1(A)(13) of the Kentucky Rules of Judicial Conduct are unconstitutional on their face because of overbreadth or vagueness;

B. That this Court issue a declaration that Rule 4.1(A)(6), Rule 4.1(A)(7), and Rule 4.1(A)(13) are unconstitutional as applied to the campaign speech identified herein;

C. That this Court award a temporary restraining order and/or preliminary injunction, enjoining enforcement of these Rules, on an as-applied or facial basis as respects the 2022 election cycle, to permit truthful protected campaign speech as set forth in Paragraph 58 and to enjoin the institution of formal proceedings;

D. That this Court award permanent injunctive relief, prohibiting the further enforcement of Rule 4.1(A)(6), Rule 4.1(A)(7), and Rule 4.1(A)(13) of the Kentucky Rules of Judicial Conduct, or, in the alternative, prohibiting enforcement of Rule 4.1(A)(6), Rule

    4.1(A)(7), and Rule 4.1(A)(13) of the Kentucky Rules of Judicial Conduct as applied to the speech of Mr. Fischer as set forth in greater detail herein;

E. That Plaintiffs be awarded their costs in this action, including reasonable attorney fees under 42 U.S.C. § 1988; and

F. Such other relief as this Court shall deem just and proper.

                                                Respectfully submitted,

                                                /s/ Christopher Wiest
                                                Christopher Wiest (KBA 90725)
                                                Chris Wiest, Atty at Law, PLLC
                                                25 Town Center Blvd, Suite 104
                                                Crestview Hills, KY 41017
                                                513/257-1895 (c)
                                                859/495-0803 (f)
                                                chris@cwiestlaw.com

                                                /s/Thomas B. Bruns
                                                Thomas Bruns (KBA 84985)
                                                Bruns, Connell, Vollmar & Armstrong, LLC
                                                4555 Lake Forest Drive, Suite 330
                                                Cincinnati, OH 45242
                                                513-312-9890
                                                tbruns@bcvalaw.com
                                                *Attorneys for Plaintiffs*

## VERIFICATION

Pursuant to 28 U.S.C. 1746, I, Joseph Fischer, declare under penalty of perjury that I have read the foregoing Verified Complaint, and state that the factual statements therein are true and accurate to the best of my knowledge.

Executed on  10-2-22 .

*[signature]*
Joseph Fischer