**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON DIVISION**
**CASE NO. 2:22-CV-00121-KCC-EBA**

**JOSEPH FISCHER,** *et al.*                                                    **PLAINTIFFS**

**v.**

**HON. KAREN THOMAS,** *et al.*                                          **DEFENDANTS**

---

**DEFENDANTS' MEMORANDUM ON STANDING**

---

The Defendants, Eddy Coleman, Joe E. Ellis, Janet Lively McCauley, R. Michael Sullivan,

Jeff S. Taylor, and, Karen A. Thomas, in their official capacities as members of the Kentucky

Judicial Conduct Commission, and Jimmy Shaffer, in her official capacity as Executive

Secretary of the Kentucky Judicial Conduct Commission, pursuant to the Court's Order (Doc.

15) for their Memorandum on Standing, state the following:

I.      **BACKGROUND**

Elections in Kentucky are nonpartisan – the ballot does not list a candidate's party,

nor are there party primaries to select nominees. *See* Ky. Const. § 117 ("Justices of the

Supreme Court and judges of the Court of Appeals, Circuit and District Court shall be elected

from their respective districts or circuits on a nonpartisan basis as provided by law."). Thus,

the Kentucky Code of Judicial Conduct ("Code") prohibits judicial candidates in Kentucky

from engaging in acts which undermine the nonpartisanship of judicial elections. *See* SCR

4.300, Canon 4.

The Kentucky Judicial Conduct Commission ("JCC") is charged with enforcement of

the Code, the Kentucky Supreme Court's standards for the ethical conduct of judges and

judicial candidates. The JCC is the only entity authorized under the Kentucky Constitution to

take disciplinary action against a sitting Kentucky judge, as well as attorneys who are candidates for judicial office. Through enforcement of the Code, the JCC's mission is to protect the public, to encourage judges and judicial candidates to maintain high standards of conduct, and to promote public confidence in the integrity, independence, competence, and impartiality of the judiciary.

Joseph Fischer and Robert Winter are candidates for the Kentucky Supreme Court and Court of Appeals, respectively (Doc. 13, PageID 97, ¶ 2), and are obligated to abide by the Canons in the Code of Judicial Conduct. *See* SCR 4.300. During their respective campaigns, the JCC received complaints alleging violations of the Code's restrictions on political activities.

In response to the complaints, and per its duties in SCR 4.170, the JCC commenced a preliminary investigation into the allegations. As a part of its confidential investigation, the JCC provided notice of the complaints to the candidates and offered them the opportunity to respond—either in writing or in person via an informal conference – with any relevant information. (*See* Fischer Letter, Doc. 13-1; Winter Letter, Doc. 13-3) The letters did *not* contain any threat of enforcement, censor Fischer or Winter, nor request they change how they run their campaigns. Instead of responding to the letters, Fischer and Winter filed this lawsuit on October 4, 2022, along with a motion seeking a temporary restraining order and/or preliminary injunctive relief.

During an October 7, 2022 telephonic hearing on Plaintiffs' motion, the Court directed the parties to file supplemental briefing to address the issues raised in its October 6, 2022 Order (DE 10).

II.      **THE JUDICIAL CONDUCT COMMISSION'S INVESTIGATORY PROCESS**

Kentucky's Constitution charges the JCC with overseeing and disciplining judicial misconduct. Ky. Const. § 121. The purpose of the Commission "is the regulation of the conduct of those persons charged with the administration of justice." *Nicholson v. Judicial Retirement & Removal Com.*, 562 S.W.2d 306, 1978 Ky. LEXIS 322 (Ky. 1978). The Commission's sole objective is "to improve the quality of justice administered within the Commonwealth by examining specific complaints of judicial misconduct, determining their relation to a judge's fitness for office and correcting any deficiencies found by taking the least severe action necessary to remedy the situation." *Id.*

The JCC has the authority "to impose the sanctions, separately or collectively of (1) admonition, private reprimand or public reprimand . . . upon any . . . lawyer while a candidate for judicial office, who after notice and hearing the Commission finds guilty of . . . [a] violation of the Code of Judicial Conduct, Rule 4.300." SCR 4.020(1)(b)(v). While decisions regarding the imposition of sanctions is discretionary based on evidence collected and presented at a hearing, the JCC does *not* have discretion on whether to investigate a complaint. Rather, ". . . upon receiving a written complaint indicating that there is a basis for investigation of a matter within the jurisdiction of the Commission under SCR 4.020, the Commission *shall* make a preliminary investigation to determine whether formal proceedings should be initiated." SCR 4.170(1) (emphasis added).

Once a complaint is received, the JCC initially determines whether the complaint falls within its jurisdiction. (Shaffer Affidavit, ¶ 5) (attached as Exh. 1) If a complaint falls within its jurisdiction, the JCC must then decide what to do next based on the information available to it. (*Id.* at ¶ 7) Most complaints are investigated by accessing and reviewing AOC records.

3

(*Id.* at ¶ 8) For example, complaints in which a litigant or attorney alleges mistreatment by a judge can be easily investigated by obtaining courtroom videos of the interactions. (*Id.*) Other complaints do not merit further investigation because they seek appellate review of a judicial order. (*Id.*) A small portion of complaints, however, require additional context and information. (*Id.*) In those circumstances – where a complaint makes allegations which are not easily reviewed and the JCC feels it would benefit from additional information – the JCC provides notice of the preliminary investigation to the judge or candidate as required by SCR 4.170(2) and invites the judge or candidate to submit a written response. (*Id.* at ¶¶ 9 – 10) If the JCC feels that the allegations are very fact and context specific, the JCC may also invite the judge to participate in an informal conference. (*Id.* at ¶ 10)

During the preliminary investigation phase, the JCC does not make findings about the truth of facts asserted in the complaint, nor does the JCC decide whether a violation of the Code of Judicial Conduct has occurred. (*Id.* at ¶ 12) It is not until the conclusion of the preliminary investigation that the JCC must determine whether formal proceedings should be initiated. (*Id.* at ¶ 13; SCR 4.170(5)) If the JCC believes that formal proceedings should be initiated, the JCC affords the judge or candidate under investigation an opportunity "to examine all factual information, including the name of the complainant if relevant, and shall afford the judge an opportunity to furnish to the Commission any information the judge may desire bearing on the investigation." (SCR 4.170(4); Exh. 1 at ¶ 14) This opportunity for inspection and response by the judge or candidate is *separate from* the opportunity to provide additional information which may be requested during the preliminary investigation by SCR 4.170(2). (Exh. 1 at ¶ 14; *see also* SCR 4.170(4)) If the JCC feels that

formal proceedings are merited after this opportunity for the judge or candidate to review and respond, the JCC commences formal proceedings pursuant to SCR 4.180.

Unlike in *prior* versions of the Supreme Court Rules, the JCC does not make any factual or probable cause determinations to commence a preliminary investigation. *See* SCR 4.170 (current) *cf.* SCR 4.170 (2015). The preliminary investigation process is designed solely to allow the JCC to obtain information in a confidential manner so that it may be able to comprehensively assess a complaint and make an informed decision with respect to its decision to pursue or not pursue formal charges. *See* SCR 4.170; SCR 4.180; *see also Maze v. Judicial Conduct Comm'n*, 612 S.W.3d 793, 802 (Ky. 2020) ("The purpose of the rule is to permit the Commission and judge to discuss and resolve the matter without the initiation of contested Formal Proceedings.")

### III.   PLAINTIFFS DO NOT HAVE STANDING

Referencing a nearly 8-year-old letter sent to Winter, Plaintiffs preemptively attempt to brush off any standing concerns by blanketly stating that this current matter is "déjà vu all over again," characterizing the JCC's actions as the "latest iteration . . . to suppress protected First Amendment speech in the context of a judicial campaign." (DE 13, PageID 96) But that is simply not so, and Plaintiffs' conclusory statements are of no moment. Because the JCC's September 2022 Letters to Fischer and Winter do not constitute a "credible threat of enforcement," they lack Article III standing to challenge the constitutionality of Rules 4.1(A)(6), 4.1(A)(7), and 4.1(A)(13).

The Supreme Court amended numerous Rules governing the JCC's conduct following the Sixth Circuit's decision in *Winter v. Wolnitzek,* 834 F.3d 681 (6th Cir. 2016). The 2016 changes to SCR 4.170 changed the Rule in one major, relevant way—the amendment

removed the requirement for a finding of probable cause to pursue a preliminary investigation. Before the 2016 amendment, SCR 4.170(1) required the Commission to make a preliminary investigation "[u]pon its own motion or upon receiving a written complaint *alleging facts indicating that there is probable cause for action* concerning a judge." SCR 4.170 (2015) (emphasis added). Now, however, the Rule requires that the Commission make a preliminary investigation "[u]pon its own motion or upon receiving a written complaint *indicating that there is a basis for investigation of a matter within the jurisdiction of the Commission under SCR 4.020*." SCR 4.170 (emphasis added). The difference is significant. The JCC was previously obligated to investigate *only* upon a finding of probable cause that the Canons were violated. Now, however, the Commission is obligated to investigate every complaint alleging a violation within its jurisdiction without first making a determination on the merits.

This distinction is critical in light of the Sixth Circuit's rationale on standing in *Winter*, supra. In *Winter*, the Commission specifically challenged Judge Jones'[1] standing on the ground that she lacked a credible threat of enforcement for her "stiff penalties for heroin dealers" comment. *Winter*, 834 F.3d at 687. There, the critical question was whether Judge Jones faced a "credible threat of enforcement" for engaging in that speech. *Id.* (citing *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342, 2346 (2014)). The Sixth Circuit posited that the answer turned on "whether the Commission's letter carried with it a valid threat of enforcement," and then concluded that it did. *Id.* The Sixth Circuit found that a credible threat

---

[1]    The JCC similarly challenged Winter and Blau's standing, but on slightly nuanced grounds. *See e.g., Winter v. Wolnitzek,* 186 F. Supp. 3d 673, 683 (E.D. Ky. 2016) ("The Commission argues that Winter has not shown a credible threat of prosecution because the Commission has not yet ordered him "to halt any present activity or warn[ed] against any future conduct.").

of enforcement existed specifically because "[t]he Commission issued the letter only after deciding 'there is probable cause for action'" as required by the pre-amendment version of SCR 4.170(1). In reaching this conclusion, the Sixth Circuit relied on precedent explicitly holding that "[a] state agency's probable cause finding provides a sufficient threat of enforcement to confer First Amendment preenforcement standing." *Id.* citing *Driehaus*, 134 S. Ct. at 2345; *Platt v. Bd. of Comm'rs on Grievances & Discipline*, 769 F.3d 447, 452 (6th Cir. 2014). Fatal to Fischer and Winter's pending challenge, the "probable cause" finding upon which the Sixth Circuit hung its hat in *Winter* is noticeably absent from the JCC's Letters.

"A plaintiff meets the injury-in-fact requirement – and the case is ripe – when the threat of enforcement of that law is 'sufficiently imminent.'" *Platt*, 769 F.3d at 451 (citing *Driehaus*, 134 S. Ct. at 2342). The threat of enforcement is sufficiently imminent when "(1) the plaintiff alleges 'an intention to engage in a course of conduct' implicating the Constitution and (2) the threat of enforcement of the challenged law against the plaintiff is 'credible.'" *Id*. at 451-52 (*quoting Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

The JCC's September Letters make no reference to enforcement, nor any finding on the merits of the complaints at all. Instead, the Fischer Letter merely states that its purpose "is to advise [him] that two complaints have been filed against [him] with the Judicial Conduct Commission." (Doc. 13-1, PageID 118) The Winter letter is no different. (Doc. 13-3, PageID 123) The Letters summarize the allegations in the complaints and ask the respective candidates for a response. There are no findings or assessments by the Commission related to the allegations, nor even a warning about the continuation of the complained of activities. The Letters merely ask for additional information and invite the candidates to "participate

in an information conference during which the Commission would like to discuss the allegations in greater detail." (Doc. 13-1, PageID 118; Doc. 13-3, PageID 123)

A threat is credible if a person must censor him or herself to avoid violating the law in question. *Platt*, 769 F.3d at 452 (citing *Carey v. Wolnitzek*, 614 F.3d 189, 196 (6th Cir. 2010)); *see also Winter*, 834 F.3d at 687-88 (finding standing in the pre-enforcement First Amendment context where plaintiffs were told by the state supreme court that certain regulations proscribed their speech and governing body had told them that it planned to enforce the regulations against them). The Commission's letters do not ask for censorship nor any change in either Fischer or Winter's behavior. The letters are, in every sense, a mere notice and request for information.

Fischer and Winter, however, maintain that none of these key distinctions matter. During the October 7, 2022 telephonic conference, Plaintiffs argued that two cases – *Kiser v. Reitz*, 765 F.3d 601 (6th Cir. 2014) and *McKay v. Federspiel*, 823 F.3d 862 (6th Cir. 2016) – compel this Court to find standing because the JCC will not, at this time, definitively disavow enforcement of the Code against them. They are incorrect, and their argument is an affront to Kentuckians everywhere who deserve the Code's protection by ensuring that judicial elections remain nonpartisan as demanded in Kentucky's Constitution.

In *Kiser*, the Ohio State Dental Board sent a letter to the plaintiff advising him, in relevant part, that it "recently concluded an investigation regarding the treatment rendered by [him] to a particular patient. Based on information received during the course of the investigation, and information that the Board had received previous thereto, concerns have arisen regarding the scope of your practice as an endodontist." *Kiser*, 765 F.3d at 605. The letter concluded by cautioning him that if he wished to declare himself as a specialist in

endodontics, he "*must* advertise accordingly, and limit [his] practice." *Id.* (emphasis added).
The Sixth Circuit found that the letter constituted a credible threat of enforcement. *See id.* at
609. The Sixth Circuit's rationale was twofold: first, the Court found that the "threat of future
enforcement may be 'credible' when the same conduct has drawn enforcement actions or
threats of enforcement in the past." *Id.* citing *Steffel v. Thompson*, 415 U.S. 452, 459 (1974).
The Court went on to note that "such a threat is considered especially substantial when the
administrative agency 'ha[s] not disavowed enforcement if [the plaintiffs] make similar
statements in the future.'" *Id.* citing *SBA List*, 134 S. Ct. 2334.

Distinguishing *Kiser*, the Sixth Circuit *declined* to find a credible threat of enforcement
in *McKay*. 823 F.3d at 870. The plaintiff in *McKay* challenged an order that prohibited the use
of electronic recording devices in a county courthouse by members of the public. *Id.* at 865.
Noting that the order did not carry "some other indication of imminent enforcement"
specifically with respect to McKay, the Sixth Circuit found that mere allegations of a
"subjective chill" on protected speech was insufficient to establish an injury-in-fact for pre-
enforcement standing purposes." *Id.* at 868 – 869 quoting *Berry v. Schmitt*, 688 F.3d 290, 296
(6th Cir. 2012). Without the indication of imminent enforcement like that present in *Kiser*,
the Sixth Circuit held that a plaintiff must also "point to some combination of the following
factors:  (1) a history of past enforcement against the plaintiffs or others; (2) enforcement
warning letters sent to the plaintiffs regarding their specific conduct; and/or (3) an attribute
of the challenged statute that makes enforcement easier or more likely, such as a provision
allowing any member of the public to initiate an enforcement action." *Id.* at 869 (internal
citations omitted). The Sixth Circuit additionally noted it has "also taken into consideration

9

a defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff." *Id.* citing *Kiser*, 765 F.3d at 609.

The JCC's September Letters to Fischer and Winter are "night and day" from the letter in *Kiser*. In *Kiser*, the state dental board (1) indicated in had concluded its investigation and determined a basis for concern, and (2) specifically instructed the plaintiff to change his course of conduct. *Kiser*, 765 F.3d at 605. Because the JCC's Letters contain no such findings nor direction to change the candidates' course of conduct, any "chill" on Fischer and Winter's speech is solely subjective. They must, therefore, demonstrate some combination of the other factors in *McKay* to establish a "credible threat of enforcement." They cannot.

While the JCC concedes that it sent a letter to Winter in the past, that letter did not entail actual enforcement. Indeed, in prior proceedings against the JCC, Winter was only able to obtain preenforcement standing. *See Winter v. Wolnitzek*, 56 F. Supp. 3d 884, 892 (E.D. Ky. 2014). The JCC has never pursued actual enforcement against Winter or Fischer. Similarly, the JCC did not send them enforcement warning letters regarding their specific conduct. And finally, Plaintiffs have failed to identify "an attribute of the challenged statute that makes enforcement easier or more likely." *McKay, supra*. To the contrary, the very existence of the JCC's confidential preliminary investigation process makes enforcement *less* likely.

To the extent that Plaintiffs urge this Court to find standing based on the JCC's inability to disavow enforcement against them at this time, Plaintiffs want the Court to hamstring the JCC's constitutional purposes. As proscribed by the Kentucky Constitution and the Commonwealth's highest court, the JCC is tasked with investigating allegations of Code violations. Ky. Const. § 121; SCR 4.020. To find standing in this circumstance – when the JCC is merely asking for information pertaining to a complaint filed against these candidates—

10

would be to undermine the JCC's authority.[2] If the JCC cannot even *ask questions* to investigate allegations made against judges and candidates, the JCC becomes nothing more than a powerless figurehead to provide a false sense of assurance of the Commonwealth's judicial integrity.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs lack standing to proceed with their claim. As a result, Plaintiffs' Motion (DE 3) must be denied. With respect to the remaining considerations in Plaintiffs' Motion (DE 3), the Defendants respectfully request that they be afforded an opportunity to file a response prior to this Court's decision.

---

[2]    This Court, of course, has the power to abstain from intervention when "there is a 'civil proceeding[] involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Aaron v. O'Connor*, 914 F.3d 1010, 1016 (6th Cir. 2019) quoting *New Orleans Public Service, Inc. v. Council of New Orleans ("NOPSI")*, 491 U.S. 350, 368 (1989). At least until such time as the JCC's investigation is concluded, and to preserve its unique authority to carry out its constitutional purposes, this Court may abstain from addressing the Plaintiffs' claims. *See e.g., Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 12, 107 S. Ct. 1519, 1527 (1987) (Although plaintiffs alleged that a jury verdict rendered against it conflicted with federal law, the Supreme Court determined that the Texas state court's ability to enforce its own jury verdicts was necessary not only "to vindicate and preserve the private interests of competing litigants," but also to "stand[] in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory.")

Respectfully submitted,

*/s/ Jeffrey C. Mando*

Jeffrey C. Mando, Esq. (#43548)
Jennifer L. Langen, Esq. (#87690)
Olivia F. Amlung, Esq. (#97449)
ADAMS LAW, PLLC
40 West Pike Street
Covington, KY 41011
859.394.6200 | 859.392.7200 – Fax
jmando@adamsattorneys.com
jlangen@adamsattorneys.com
oamlung@adamsattorneys.com

*Attorneys for Defendants, Eddy Coleman, Joe E. Ellis, Janet Lively McCauley, R. Michael Sullivan, Jeff S. Taylor, and, Karen A. Thomas, in their official capacities as members of the Kentucky Judicial Conduct Commission and on behalf of Defendant, Jimmy Shaffer, in her official capacity as Executive Secretary of the Kentucky Judicial Conduct Commission*

## CERTIFICATE OF SERVICE

I hereby certify that on this the **11th** day of October, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: Christopher Wiest, Esq. and Thomas Bruns, Esq.

*/s/ Jeffrey C. Mando*

Jeffrey C. Mando, Esq.