## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY – (Covington)

JOSEPH FISCHER, et. al.             :        Case No.: 2:22-cv-121-KKC

    Plaintiffs                          :

v.                                          :

HON. KAREN THOMAS, et. al.          :

    Defendants                         :

## PLAINTIFFS' SUPPLEMENTAL BRIEF ON STANDING WITH DECLARATIONS OF JOSEPH FISCHER AND ROBERT A. WINTER, JR., ATTACHED

This Court directed the parties to file supplemental briefs on the issue of standing. In support of that directive, Plaintiffs each submit a declaration. Mr. Winter was the Plaintiff in *Winter v. Wolntizek*, and his declaration attaches the correspondence he received in 2014 from Defendants, prompting the *Winter* litigation, and the correspondence he received in 2022, prompting this litigation. [Dec. Winter]. As he makes clear in his declaration, the 2022 correspondence has more indications of an imminent enforcement action than did the 2014 correspondence: the most recent letter contains an invitation to appear, indicates counsel may be necessary, and directs any such counsel to enter a notice of appearance. *Id.*

And, both Mr. Fischer and Mr. Winter explain the significance of the Judicial Conduct Commission ("JCC")'s letter to them in the middle of this election cycle, coupled with the JCC's past consideration of prompt responses to JCC letters as relevant to mitigation in enforcement matters. [Dec. Winter; Dec. Fischer]. They both explain they now are considering self-censorship, in the middle of a judicial campaign that spans many Northern Kentucky counties. *Id.* And they recount the timing of the JCC's letter, and the significance of that timing coming during the last month before the election. *Id.*

1

Before we turn to the law on standing, a few points from that last 2014 effort at censorship bear mentioning. Following the 2014 litigation, the then-chair of the JCC rightly pointed out that "I am not convinced that there is much of anything we can keep anyone from saying."[1] Despite this bit of honesty, it did not keep them from going back to that unconstitutional well in 2022. That's because after the JCC's last failed effort, the Kentucky Supreme Court gerrymandered the JCC rules regarding claim processing in an attempt to divest federal courts of the ability to hear challenges to those rules and the unconstitutional application of those rules by Defendants.

Specifically, Defendants claim their exercise in word play now allows them to begin the drawn-out process of enforcement a month before the election, to chill speech during that process, while they simultaneously argue that there is no standing for any challenge in federal court because the commission, allegedly, hasn't made any "probable cause" decision on the potential merits of the charge. This is despite the fact the JCC "met and considered" the charge and then "requested" the target of the investigation to respond. And then, when this gerrymandered process has concluded, all free from federal review, the JCC can decide to bring formal charges and argue, yet again, that any challenge in federal court is foreclosed, this time under abstention. *Cf Younger v. Harris*, 401 U.S. 37 (1971). Well, as we demonstrate below, this attempted gerrymander out of any possibility of federal review of the unconstitutional suppression of speech is too clever by half, because standing exists now.

---

[1] https://www.courier-journal.com/story/news/local/2014/07/11/lawsuit-challenges-non-partisan-judicial-races/12546173/ (last visited 10/9/2022).

## I.      Mr. Fischer and Mr. Winter have standing

We begin with *Winter v. Wolntizek*, 834 F.3d 681 (6th Cir. 2016).  As in *Winter*, "[t]he question is whether [Winter and Fischer] face[] a 'credible threat of enforcement' for engaging in that speech."  *Id.* at 687, *citing Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 158, 164 (2014).  In making that determination, there is no rule about an explicit finding of probable cause.  Rather, the rule is designed to be broader than that in order to prevent the very arguments about standing Defendants now make.

Turning to the relevant question, here, Defendants determined two things after meeting and considering the charges: (i) there is a basis for investigation of a matter; that is (ii) within the jurisdiction of the JCC.  SCR 4.170(1).  The Oxford dictionary definition of "basis," is that there is "underlying support or foundation for an idea, argument, or process."  Meanwhile, "[p]robable cause has been defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Padro*, 52 F.3d 120, 122-23 (6th Cir. 1995).  Applying these definitions, there is no material difference between what Defendants actually did here (actually "finding" a "basis," meaning determining there is an "underlying support or foundation" for an investigation, which quite clearly, like probable cause, is more than a mere suspicion), and what they used to do (formally making a probable cause determination). *Winter*, 834 F.3d 681, 687.  In other words, the steps Defendants admittedly took are, in essence, an acknowledgment that there is, at least in the eyes of the JCC, "reasonable grounds for belief" of a violation.

As in *Driehaus*, the fact that Mr. Winter's similar, previous speech drew enforcement in a prior election cycle is relevant to the question of credible threat of enforcement.  573 U.S. 149 at 163-164.  In *Driehaus*, the Supreme Court observed that even <u>less</u> than a probable cause finding

would be sufficient.  *Id.* at 164.  In fact, "past enforcement against the same conduct [even by others] is good evidence" of standing.  *Id.*, *citing Steffel v. Thompson*, 415 U. S. 452, 459 (1974). And "credibility of that threat is bolstered by the fact that [as here] authority to file a complaint with the Commission is not limited to a prosecutor or an agency."  *Dreihaus,* 573 U.S. 149, 164. The Supreme Court in *Dreihaus* also observed that "administrative action, like arrest or prosecution, may give rise to harm sufficient to justify pre-enforcement review."  *Id.* at 165.

"Of particular concern" to the Supreme Court in *Dreihaus*, and equally relevant to the standing question here, are the "burdens that Commission proceedings can impose on electoral speech..."  *Id.*  The Supreme Court was particularly concerned in Dreihaus that "the 'practical effect' of the [enforcement scheme] is 'to permit a private complainant . . . to gain a campaign advantage without ever having to prove the falsity of a statement.'"  *Id.*  Well, the private complaints raised against Mr. Fischer and Mr. Winter, in the month prior to the 2022 election, generate exactly these same concerns and campaign advantages to their opponents.  [Dec. Fischer; Dec. Winter].

Almost channeling clairvoyance, the Supreme Court then raised a concern, militating towards a finding of standing, that "complainants may time their submissions to achieve maximum disruption of their political opponents while calculating that an ultimate decision on the merits will be deferred until after the relevant election."  *Id.*  And, of equal concern, "the target of a [JCC] complaint may be forced to divert significant time and resources to hire legal counsel and respond to discovery requests in the crucial days leading up to an election."  *Id.* Well, all of that is true here. [Dec. Fischer; Dec. Winter]

In *Steffel*, the Supreme Court made clear that even a warning by an enforcement agency would be sufficient to demonstrate a credible threat of enforcement.  415 U. S. 452, 459.  Indeed,

4

the Supreme Court made clear in *Steffel* that "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."  *Id.*  A demonstration of standing in the First Amendment context is further bolstered under *Steffel* where the Plaintiff can cite "specific provisions of state law which have provided the basis for threats" of enforcement against him. *Id.*  Mr. Winter and Mr. Fischer did both, and, as it turns out, so did the JCC, tracking language of the Code of Judicial Conduct Code in its correspondence, as Mr. Winter and Mr. Fischer point out in their declarations.  [Dec. Fischer; Dec. Winter].

Several other cases are highly relevant to the standing analysis.  In *Platt v. Board of Commissioners on Grievances and Discipline*, 769 F.3d 447 (6th Cir. 2014) the Sixth Circuit analyzed the same issue here, whether or not the judicial candidate had standing to challenge the speech restrictions of a Code of Judicial Conduct.  The Sixth Circuit in *Platt* determined that a party had standing, and a claim was ripe when "(1) the plaintiff alleges "an intention to engage in a course of conduct" implicating the Constitution and (2) the threat of enforcement of the challenged law against the plaintiff is "credible." *Id.* at 451-452, *citing Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 298 (1979).

Observing that Mr. Platt, like Mr. Winter and Mr. Fischer have here, plead that he intended to engage in speech that was arguably prohibited by the sections of the speech code he challenged, the Sixth Circuit turned to the credible threat prong.  *Platt*, 769 F.3d at 452.  The Sixth Circuit, observed that the speech code restrictions "at least chill, and in some instances prohibit, [Platt's desired] forms of communication." *Id. citing Carey v. Wolntizek,* 614 F.3d at 196 (6th Cir. 2010).  And, the Sixth Circuit held that the plaintiff would have to "censor[] himself" to avoid violating the Code, which amounts to a "credible fear of enforcement." *Platt*,

769 F.3d at 452.  Also significant for the Sixth Circuit was that the enforcement agency accepted complaints from the public.  *Id.*  And "second, when directly asked at oral argument, the State refused to disavow the enforcement of the Code as applied to Platt, further adding credibility to Platt's alleged fear."  *Id.*  Significantly, in *Platt*, <u>there was no letter directed to the plaintiff whatsoever</u>.  Nevertheless, the Sixth Circuit found standing.

As in *Platt*, both Mr. Winter and Mr. Fischer submitted declarations demonstrating the credible threat they face.  [Dec. Fischer; Dec. Winter].  They both explain that they are considering self-censoring measures to mitigate enforcement penalties.  *Id.*  As in *Platt*, self-censorship confers standing.  And, as in *Platt*, at oral argument last Friday, October 7, 2022, Counsel for the JCC ***declined to disavow enforcement***, "further adding credibility to [Mr. Fischer and Mr. Winter's] alleged fear."  *Id.*  And, we submit, that nothing in the JCC's supplemental memoranda does anything to disavow enforcement.

It does not matter, incidentally, that Counsel for the JCC could not indicate whether or not the JCC would bring an enforcement action – what matters, under *Platt* and other Sixth Circuit cases, is that the statements at issue are protected speech and counsel **did not disavow enforcement** of the speech code against Mr. Winter and Mr. Fischer.  *Id.*  That was all that was needed in *Platt*: (i) speech that was arguably subject to the code and the possibility of self-censorship; and (ii) a refusal/failure by the enforcement agency to disavow enforcement.  *Id.*  Without question, both of those elements are met here.  [Dec. Fischer; Dec. Winter; Tr. Hearing 10-7-22].

We expect, in its simultaneous briefing, that the JCC will make all sorts of arguments about the alleged lack of a determination of probable cause and the changes to the rule, but what the Court will not hear is an express disavowal of enforcement against the same protected speech

under the now gerrymandered rule. Absent such an express disavowal, and for the reasons noted above, this is dispositive under *Platt* that standing exists.

Next, we turn to *Carey*, 614 F.3d 186, 196, where the Sixth Circuit addressed standing and ripeness. The Sixth Circuit found both and concluded that the plaintiff "claims an interest in engaging in protected speech that implicates, if not violates, each clause." *Id.* Finding that Mr. Carey wanted to engage in speech that was arguably prohibited by the canons, the Sixth Circuit found that the mere existence of the judicial speech code "at least chill, and in some instances prohibit, these forms of communication," and that the plaintiff censored himself on each topic. *Id.* Well, here, Plaintiffs Fischer and Winter did not censor themselves, and got a "request" to respond to the JCC for their efforts, prompting each of them to now consider censoring themselves and pulling those materials from the field, at an enormous cost and expense. [Dec. Winter; Dec. Fischer].

A few more cases demonstrate standing. First, *Kiser v. Reitz*, 765 F.3d 601 (6th Cir. 2014). There, a letter directed to the plaintiff stating "concerns have arisen," and citing the relevant portion of the regulations was sufficient to confer standing. *Id.* at 605. In *Kiser*, what added to this conclusion was the fact that the Board refused to disclaim enforcement in response to an inquiry letter back to it. *Id.* And, the Sixth Circuit explained in *Kiser* that ripeness was actually judged under standing principles. *Id.* at 607. Next, that Court observed that standing is relaxed in the First Amendment context. *Id.* And, when it came to credible threats of enforcement, the Sixth Circuit observed that "[s]uch a threat is considered especially substantial when the administrative agency 'ha[s] not disavowed enforcement if [the plaintiffs] make similar statements in the future.'" *Id.* at 609.

7

After these, and other, standing cases, the Sixth Circuit in *McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016) synthesized its standing analysis into four elements (only one of which needed to be met to establish standing): (1) "a history of past enforcement against the plaintiffs or others"; (2) "enforcement warning letters sent to the plaintiffs regarding their specific conduct"; (3) "an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action"; or (4) the "defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff." *Id.*

Applying these *McKay* factors, Mr. Winter has drawn past enforcement for the same speech, and both candidates' declarations document that the JCC enforces the Canons at issue, including Rule 4.1(A)(7).[2]  Next, Mr. Fischer and Mr. Winter have drawn enforcement warning letters regarding their specific conduct.  This is particularly true where those letters advise them the JCC has met and considered the allegations, that the candidates are "requested" to respond and are "invited" to a proceeding, and if they want to be represented by Counsel at that proceeding, they must have that counsel enter a formal appearance.  And third, the JCC not only accepts complaints from the public, but that these public complaints prompted the September 27, 2022 letters to Mr. Winter and Mr. Fischer.  And, finally, the JCC has refused to disavow enforcement.  While *any* of these factors demonstrate a credible threat of enforcement, all of them are met here.

Finally, and most recently, is the Sixth Circuit's decision last year in *Online Merchs. Guild v. Cameron*, 995 F.3d 540 (6th Cir. 2021).  There, as here, investigations were opened into

---

[2] https://kycourts.gov/Courts/JCC%20Actions%20Documents/2020privatereprimand05262020.pdf (last accessed 10/8/2022).

what the government actor considered were potential violations of the law.  *Id.* at 543-544.  In connection with those investigations, the Kentucky Attorney General directed particular entities to provide information through subpoenas.  *Id.* at 545-546.  When a pre-enforcement suit was filed seeking a preliminary injunction, the Kentucky Attorney General argued there was no standing because there was no credible threat of enforcement.  Specifically, he argued that he had not made any finding that a violation of any law occurred, but instead he was merely investigating based on the fact he had "reason to believe" a law was violated or would be in the future.  *Id.* at 550.    But the Sixth Circuit rejected this argument and found that the warning letter prong was met where correspondence was directed to a party that indicated a possible violation coupled with an investigation.  *Id.* at 551.  That is exactly what we have here.

    Plaintiffs have demonstrated standing.

                                            Respectfully Submitted,

                                            /s/ Christopher Wiest_____
                                            Christopher Wiest (KBA 90725)
                                            Chris Wiest, Atty at Law, PLLC
                                            25 Town Center Blvd, Suite 104
                                            Crestview Hills, KY 41017
                                            513/257-1895 (c)
                                            859/495-0803 (f)
                                            chris@cwiestlaw.com

                                            /s/Thomas B. Bruns
                                            Thomas Bruns (KBA 84985)
                                            Bruns, Connell, Vollmar & Armstrong, LLC
                                            4555 Lake Forest Drive, Suite 330
                                            Cincinnati, OH 45242
                                            513-312-9890
                                            tbruns@bcvalaw.com

                                            /s/Zach Gottesman_____
                                            Zach Gottesman (KBA 86288)
                                            404 East 12 St., First Floor
                                            Cincinnati, OH 45202
                                            zg@zgottesmanlaw.com

(513) 225-8997
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing upon Counsel for the Defendants, this

11 day of October, 2022, by service of same via CM/ECF.

/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)

10