1

<pre>
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF KENTUCKY
 2                    NORTHERN DIVISION AT COVINGTON
                                - - -
 3
      JOSEPH FISCHER, et al.,      : Docket No. 22-cv-121
 4                                 :
                      Plaintiff,   : Lexington, Kentucky
 5                                 : Friday, October 7, 2022
                                   : 2:00 p.m.
 6    v.                           :
                                   :
 7    KAREN A. THOMAS, et al.,     :
                                   :
 8                    Defendant.   :

 9                                - - -
                 TRANSCRIPT OF TELEPHONIC MOTION HEARING
10                   BEFORE KAREN K. CALDWELL
                 UNITED STATES DISTRICT COURT JUDGE
11                                - - -

12    APPEARANCES:

13    For the Plaintiff:          CHRISTOPHER DAVID WIEST, ESQ.
                                  Christopher Wiest, Attorney at Law
14                                25 Town Center Boulevard
                                  Suite 104
15                                Crestview Hills, Kentucky 41017
                                    and
16                                THOMAS B. BRUNS, ESQ.
                                  Bruns, Connell, Vollmar &
17                                Armstrong, LLC
                                  4555 Lake Forest Drive
18                                Suite 330
                                  Cincinnati, OH 45242
19
      For the Defendant:          JEFFREY C. MANDO, ESQ.
20                                OLIVIA FLORA AMLUNG, ESQ.
                                  Adams Law, PLLC
21                                40 W. Pike Street
                                  Covington, Kentucky 41011
22
      Court Reporter:             ELAINE S. HABERER, RPR
23                                Official Court Reporter
                                  101 Barr Street
24                                Lexington, Kentucky 40507
                                  (859) 469-7456
25         Proceedings recorded by mechanical stenography,
      transcript produced by computer.
</pre>

1          (Proceedings held in chambers at 2:05 p.m.)

2               THE COURT:  Hello, this is Judge Karen Caldwell.

3     We'll be on the record in Covington Civil Action Number

4     22-121, Joseph Fischer, and others, versus Karen Thomas, and

5     others.

6          Who's on the line for Joseph Fischer and Robert Winter?

7               MR. WIEST:  Good afternoon, Your Honor.  Chris Wiest

8     and I believe Mr. Bruns has also joined me.  Mr. Fischer may

9     be dialling in; he won't be participating, he's just listening

10    in.

11              THE COURT:  That will be perfectly fine.

12         Mr. Bruns, are you there?

13              MR. BRUNS:  Yes, Your Honor, this is Tom Bruns, I am

14    here.

15              THE COURT:  Bruns, okay.  Give me two ways to

16    pronounce a name and I'll get it wrong every time.  Thank you

17    very much.

18         And who's on the line for the defendants in this case?

19              MR. MANDO:  Good afternoon, Your Honor.  Jeff Mando

20    and Olivia Amlung on behalf of the Judicial Conduct Commission

21    defendants.

22         I am not certain whether some members of the Commission,

23    some of the judges on the Commission indicated they may join

24    in to listen today, but I'm not sure if they're on the line.

25              THE COURT:  All right.  They're welcome to join.

3

1    Mr. Mando and Ms. Amlung.

2         This matter is before the Court on the plaintiff or

3    petitioner's request for a temporary restraining order in this

4    case.

5         Let me first thank all of you for making yourselves

6    available on such short notice.  And I really want to focus

7    this conversation on a couple of discrete issues.  And that is

8    whether a temporary restraining order is an appropriate remedy

9    at this point and whether there is a credible threat of

10   imminent enforcement against the petitioners in this case.

11        I think, as I've looked back at the case law in this

12   case, all of you are well acquainted with it.  In fact, you

13   represented the parties involved in *Winter v. Wolnitzek*, which

14   is probably the primary case on this matter.

15        And as we looked at this, what we recognized is that --

16   and I'll cite *Winter v. Wolnitzek,* 834 F.3d 681, that was

17   decided in 2016.  But that decision was based on an earlier

18   version of Supreme Court Rule 4.170 that actually indicated

19   that the Commission had to make a probable cause determination

20   to take action against a judge, or it sounds like even to

21   initiate an inquiry.

22        Since that time, the rule has been revised, and my first

23   question to both of you is going to be, does this change our

24   analysis, particularly since Judge Sutton emphasized the

25   probable cause determination?

1       And maybe we should start the discussion with Mr. Mando.

2  And let me ask you, what happens when complaints come before

3  the Judicial Conduct Commission?  Is one of these letters that

4  was sent to the petitioners in this case issued in every

5  instance of a private complaint?

6           MR. MANDO:  No, ma'am.

7           THE COURT:  All right.  So what kind of determination

8  does the Judicial Conduct Commission make?  Is it a de facto

9  probable cause determination?

10          MR. MANDO:  No, ma'am.

11          THE COURT:  What is it?

12          MR. MANDO:  All complaints that come into the

13  Commission, a facial review is undertaken.  The Commission

14  looks at those complaints and if the allegations of fact could

15  be true -- they don't make a determination if they're true --

16  but if they make allegations that could be proven as true, if

17  that constitutes a violation of the Canons, then they would

18  send a letter to the judge.

19       They do not make any determinations of whether the

20  allegations are true or false.  It's almost like a Rule 12

21  standard, Your Honor.  They have to construe the allegations

22  in the complaint as true and they make a determination as to

23  whether or not those allegations would con -- could constitute

24  a violation of the Canons if proven, and then they go from

25  there.  They have considerable discretion.

1          THE COURT:  All right.  But if they construe it as

2     true and that would constitute a violation of the Canon, then

3     haven't they put a potential violator on notice that they are

4     in violation of the Canon?

5          MR. MANDO:  And Your Honor, if I misspoke, I'm sorry.

6     They are not making a determination that they're true, they

7     are not assuming them to be true, they're just reading those.

8     It's just jurisdictional.  They're just reading those to see

9     if that could constitute and falls within their jurisdiction;

10     that's all they're doing.

11          THE COURT:  Okay.

12          MR. MANDO:  And then they go from there.

13          THE COURT:  All right.  So you're not saying that if

14     it's true, it is, therefore, a violation.  It's if it's --

15          MR. MANDO:  No.

16          THE COURT:  -- true, it falls within our

17     jurisdiction.

18          MR. MANDO:  Correct.  That's all they're doing is

19     looking to see if it's within their jurisdiction.

20          And to your earlier question, there is a significant

21     difference in the rule currently in effect versus what was in

22     effect when we litigated *Winter v. Wolnitzek*, as the Court has

23     picked up on.

24          THE COURT:  And I suspect that the *Winter* case

25     inspired the revision of the rule; would that be a fair

1    assumption on my part?

2        MR. MANDO:  Yes, ma'am.  And it also inspired other

3    amendments and revisions to the Canon.  The Canons are worded

4    differently than they were when *Winter v. Wolnitzek* was

5    litigated.  4.170 was specifically reworded, and now it

6    provides that the Commission is required to make a preliminary

7    investigation upon its own motion or upon receiving a written

8    complaint indicating that there is a basis for investigation

9    of a matter within the jurisdiction of the Commission under

10   4.020.

11       Previously the rule read that the Commission is required

12   to make a preliminary investigation upon its own motion or

13   upon receiving a written complaint alleging facts indicating

14   there is probable cause for action concerning a judge.

15       And, of course, in the *Winter v. Wolnitzek* case, when

16   they were looking specifically at Judge Jones, they

17   established that she had standing because the letter that was

18   written by the Commission to Judge Jones in that particular

19   case specifically indicated there was -- the Court had

20   determined that that letter and the statements indicated there

21   was probable cause for action, and they felt -- the Court felt

22   that that was -- that finding constituted sufficient evidence

23   of a credible threat of enforcement.

24       And, of course, we don't -- I don't think we have that

25   here, Your Honor.  The letter that was sent to Mr. Fischer,

which is attached to the verified complaint that Mr. Wiest
filed, is markedly different from what was sent to Judge Jones
in the *Winter v. Wolnitzek* case.

THE COURT:  All right.

MR. MANDO:  That particular letter, there's no
reference to a probable cause finding; it merely advises
Mr. Fischer that two complaints had been filed.  It summarizes
the allegations, invites a response from Mr. Fischer.  There's
no request for censorship, there's no demand or request for a
change in behavior, and it invites him to attend an informal
conference with the Commission.

THE COURT:  All right.

MR. MANDO:  That's all it does.

THE COURT:  All right.  Mr. Wiest, in your amended
complaint and in the original complaint, you continue to use
the word that the JCC has determined that there is a probable
violation of the ethical Canon.  And that was the case in the
*Winter v. Wolnitzek* holding, and Judge Sutton zeroed in on
that in terms of this suggests a credible threat of
enforcement.

But here, it's almost like we're notifying you that
somebody has made a complaint about you, and if it is true, it
may constitute a violation of the ethical Canons.  The JCC
doesn't accuse neither Mr. Fischer nor Mr. Winter of any kind
of violation.

8

1    So how do you construe that to be a credible threat of

2    imminent enforcement?

3    MR. WIEST:  Three responses, Your Honor.  We, first

4    of all, disagree that -- about the nature of a threat.  And

5    the reason that we disagree -- and I'm just -- if it -- you

6    know, the letter language is similar, so if it pleases the

7    Court, I think what I'd like to do is just focus in on the

8    letter of Mr. Fischer.

9    THE COURT:  Okay.  I think they're almost identical,

10   aren't they, Mr. Wiest?

11   MR. WIEST:  They are; right.  And Judge, there's a

12   few less allegations, if you will, in the Winter letter than

13   there were in the Fischer letter.

14   THE COURT:  All right.  That's helpful.

15   MR. WIEST:  But when you look at -- and I'm looking

16   in particular about several aspects of this.  First of all,

17   the -- and I think -- I don't think Mr. Mando disputes this.

18   There is language in the letter that indicates that complaints

19   have been filed.  Public -- and there's no doubt that the JCC

20   received complaints.  And I'm going to talk in just a minute

21   about the Sixth Circuit's most recent standing case that deals

22   with that issue, but one of the factors is whether or not they

23   received complaints from the public.

24   Second, they track the language of the rules in the

25   second paragraph.  While it doesn't cite the specific rule, it

1   tracks the language of the rule.  And in fact, it tracks the

2   language of Rule 4.1(A)(6), (A)(7), and (A)(13), of Canon 4 of

3   the Judicial Conduct Code.

4        And so they are citing that they're saying, you know, the

5   complaint alleges that you've engaged in the following

6   activity -- campaign activity, and then they get into more

7   specifics for Mr. Fischer.

8        They say that he has publicly identified himself as a

9   nominee, which is a violation of 4.1(A)(6).  He has accepted

10  and used endorsements from the Republican Party, which is a

11  violation of 4.1(A)(7).  And they say the complaint further

12  alleged that you have made pledges, promises, or commitments

13  in connection with cases, controversies, or issues likely to

14  come before the Court, specifically the issue of abortion,

15  which tracks 4.1(A)(13).

16       They then indicate that they have considered and

17  discussed the complaint, Your Honor, that's the third

18  paragraph.  And they direct a written response to

19  the allegation.

20       I then turn back, before I get into the Sixth Circuit

21  case law on this, to Rule 4.170, the complaint preliminary

22  investigation.  And it is not merely that it is within the

23  jurisdiction, but that there is a basis for investigation.

24       Now, I understand that the Kentucky Supreme Court is

25  attempting to gerrymander, if you will, this sort of thing out

1    of standing to make it more difficult to challenge so that

2    they can effectively restrain speech and make it very, very

3    difficult to -- or at least to put another hurdle up into the

4    standing analysis to prevent a challenge like this, which is

5    why they amended the rules.

6         But if you look at the language, they don't just send

7    letters, period.  There has to be a basis for investigation of

8    a matter within the jurisdiction, and they direct Mr. Fischer

9    to do two things.  They direct him to file a written response

10    and they direct him and request that he appear.

11         And I want to get into, if I can, Your Honor, just a

12    couple standing cases in particular that I think are relevant

13    in this regard.  And I really want to focus in on a couple of

14    cases.  The first one is *Kiser v. Reitz*, it's a 2014 decision

15    by the Sixth Circuit; it is published and it's 765 F.3d 601.

16    And they indicate in that case that a warning letter --

17    there's no mention of probable cause, by the way, but a

18    warning letter directed to the defendant in that -- or the

19    plaintiff in that case that was suing over the speech code at

20    issue in that case, was sufficient to confer standing.

21         I think when you look at some of the -- in particular,

22    some of the Sixth Circuit cases, and there is that seminal

23    case on that issue.  The Sixth Circuit has recently, I think,

24    come into or talked about, and that is -- give me one second,

25    Your Honor, I'm getting into my outline here.

1          THE COURT:  Okay.

2          MR. WIEST:  *McKay v. Federspiel*, Judge, is really the

3    seminal Sixth Circuit standing case that talks about what

4    needs to be there, and that's 823 F.3d 862.

5          THE COURT:  823, did you say?

6          MR. WIEST:  Yes, Your Honor, 823 F.3d 862.

7          THE COURT:  All right.

8          MR. WIEST:  They talk about what needs to be there

9    for a pre-enforcement challenge, and they say that generally

10   there are some things that they look at -- give me one second.

11        "The history of past enforcement against the plaintiffs

12   or others, enforcement warning letters sent to the plaintiffs

13   regarding their specific conduct," is the second prong that is

14   sufficient to establish standing.

15        And that specific cite, Judge, I want to give you a

16   pincite is at 869 of that decision.  They talk about

17   enforcement warning letters being sufficient.  And/or (3), "An

18   attribute of the challenged statute that make enforcement

19   easier or more likely, which as a provision allowing any

20   member of the public to basically file a complaint," which is

21   what we have here.

22        So we have two of the three prongs, and the Sixth Circuit

23   suggests that any of those are sufficient to confer standing

24   in *McKay*.  *McKay* is really the seminal standing case in these

25   First Amendment type challenges.

1       And then, you know, as a consequence of that -- and I
2   think it's interesting, Mr. Mando says, well, they've not
3   specifically directed him to discontinue.  No, they just
4   directed him to appear and account for his conduct.

5       And with all due respect, Judge, if that doesn't kill
6   speech, nothing does.

7       Now, there's one other thing that I think is interesting,
8   and I really think this is a question the Court -- the Sixth
9   Circuit actually directs the Court to direct Mr. Mando, and I
10  would ask you to do that.  We have set forth in detail what
11  Mr. Winter and Mr. Fischer have done in terms of their
12  campaign activity.  And I think the Court needs to pose the
13  question to Mr. Mando, are his clients disavowing any
14  intention of enforcement or any possible enforcement as a
15  consequence of the factual allegations that Mr. Fischer and
16  Mr. Winter have indicated they will engage in.

17      And that's the question I think has to be directed to
18  Mr. Mando.  And that is also in the *McKay* case that the Sixth
19  Circuit takes into account the defendants' refusal to disavow
20  enforcement against a particular plaintiff as a key
21  consideration in the standing analysis.

22      So I think for all those reasons, Your Honor, we believe
23  that there is standing, particularly under the *McKay*
24  precedent.

25          THE COURT:  All right.  Why don't you respond,

1   Mr. Mando?

2       I mean, generally this defendant wants to truthfully say

3   he's a Republican candidate -- excuse me, this plaintiff.  He

4   wants to use and advertise his endorsements from others,

5   including Kentucky Right to Life.  He wants to continue to

6   indicate that he'll defend the rule of law without engaging in

7   judicial activism, and he wants to make known the endorsements

8   he's received from, among others, Republican executive

9   committee members.

10       Is it the Commission's intention to take enforcement

11   against him -- enforcement actions against him for any of

12   those activities?  I mean, he's doing those activities; he

13   admits he's doing those activities.

14           MR. MANDO:  And, Judge, the short answer is I don't

15   know.  I mean, the Commission doesn't issue advisory opinions.

16   They deal with, you know, the facts of a particular situation.

17   And in this particular case, I recognize what Mr. Wiest is

18   saying.

19       I don't believe those cases were cited in his motion for

20   temporary restraining order, and we would certainly like the

21   opportunity to look at those and respond.  But the one thing I

22   do know that's in front of me is that, contrary to what

23   Mr. Wiest has said, you know, a written response from

24   Mr. Fischer was requested.

25       He was not directed to appear at a meeting with the

1    Commission; he was invited to appear.  He was free -- he's

2    free to accept or reject that.  Just because the language that

3    is in the letter to Mr. Fischer in some ways tracks what's in

4    the rules, that in and of itself is not an indication that

5    they've made any determination of probable cause or that

6    they're going to prosecute Mr. Fischer.  It may merely be an

7    iteration of what was in the complaint that the Commission

8    received.

9         It's done just because it falls within the

10   jurisdiction -- it indicates that that's within the

11   jurisdiction of the Commission.  In this particular case, it

12   is -- I don't see how the Court can construe this letter as a

13   credible threat of enforcement, especially in light of what

14   happened in *Winter v. Wolnitzek* and the change in -- the

15   significant change in the language in 4.170.

16        THE COURT:  Now, if Mr. Fischer doesn't appear and

17   doesn't respond, will the Commission take action against him

18   and institute formal proceedings?

19        MR. MANDO:  I don't know.  And I'm not trying to

20   avoid answering that question.  I literally don't know.

21        THE COURT:  Okay.  Well, this is helpful.  It is very

22   helpful.  You know, even in *Winter v. Wolnitzek,* Judge Sutton

23   discusses the fact that these are public complaints.  We don't

24   look to the reasons these kinds of complaints are filed, but

25   we can assume that these people are political enemies or

1    non-partisan campaign enemies.  And I think regardless of who

2    the candidate is, that probably would be the case.

3        So I think what we have to look at is what is the effect

4    of all this?  And I agree, the language of the letter simply

5    advises him of the allegations of the complaint that's been

6    made against him.  It simply invites him to appear, but it

7    does not notify him of the ramifications of his failure to

8    appear.  So I guess that's why I asked you that question.

9            MR. MANDO:  Yes, ma'am.  And I want to clarify one

10   thing factually.  I want to make sure we're all on the same

11   page, and Mr. Wiest will acknowledge this too.  These

12   complaints are still confidential at this stage; they are not

13   in the public domain.  The JCC proceedings are confidential up

14   and until after formal proceedings are initiated by the

15   Commission.

16           THE COURT:  That's helpful.

17           MR. MANDO:  So these complaints are confidential.

18   The letter that was sent to Mr. Fischer would be construed to

19   be confidential by the Commission.  Now, Mr. Fischer has

20   waived that to some degree by attaching it in a public record,

21   but I want to make sure the Court is aware that the complaints

22   that are filed with the Commission are confidential at this

23   stage.

24           THE COURT:  Well, I would be a little more persuaded

25   by the Commission's argument, Mr. Mando, if they sent one of

1    these letters out for every complaint.  If the purpose of it

2    is just to notify a candidate or a judge of the complaint

3    that's been brought against them and whether it's within their

4    jurisdiction, why wouldn't you do it in every single

5    complaint?  I mean, some causation determination must have

6    been made, as you, yourself, said.

7            MR. MANDO:  Your Honor, we do it in almost all cases.

8    Let me give you a couple of examples where a letter might not

9    go out.

10        We receive letters, complaints against judges where the

11   judge has died.  We've received complaints against judges

12   where they have been out of office for six months or more.

13   Now, we would not send out letters in those cases, so that's

14   what I'm talking about.

15           THE COURT:  All right.  So it's only the exceptional

16   case where there's no jurisdiction because the judge is dead

17   or out of office?

18           MR. MANDO:  Correct.

19           THE COURT:  Okay.  But let me come back to you for a

20   minute, Mr. Wiest.  How is this Commission supposed to do its

21   job?

22        It receives public complaints, whether they're credible

23   or not, they have to act on them.  And would it not be unfair

24   to a candidate to not know the nature of the complaint and the

25   factual allegations that are made in support of that

1   complaint?

2       How could it ever do its job if it can't at least make a

3   preliminary inquiry?

4           MR. WIEST:  Well, Your Honor, I think two points to

5   that.  And if I can, Judge, I don't mean to backtrack, but I

6   do want to note for the record that Mr. Mando declined to

7   disavow enforcement on behalf of his client.  I understand he

8   may not know, but I think that that's significant under *McKay*.

9       Moving on to your question, Judge, two responses.  I

10  think this Commission can do its job, but what it can't do is

11  send enforcement warning letters out to people that are

12  engaged in First Amendment activity.

13      And with all due respect, an invitation -- I don't know

14  if you want to count it as an invitation or a directive.  I

15  think it would be the foolish person that does not respond to

16  this and would not, you know, state their basis.  But it would

17  be an invitation to appear based on First Amendment activity.

18  First Amendment protected activity is the very part of why we

19  have these sorts of claims, particularly in the context of

20  campaign speech.

21      And so I think they can do their job, but I think when

22  you're dealing with campaign speech and First Amendment

23  protected speech, you know, it requires particularly -- and

24  what I find interesting about this letter is, hey, we've

25  discussed this and we'd like you to come in.  You know, it can

be an invitation, you can construe it as a directive, we want you to come in.

Now, Your Honor, I'd like you to maybe put yourself in the feet of the judicial candidate. Well, that's a heck of a Hobson's choice. Come in at the end of this month, in a critical month, a month before the campaign, to account for your First Amendment activity and your campaign activity.

And B, do you discontinue what you've been doing, which is protected under clear case law, and, you know, maybe you can absolve or mitigate, you know, the enforcement action they're going to take against you? Or do you plow straight ahead, having already received this letter from the enforcement body about your campaign activities?

And I think the simple answer to it is, as I read the rule, you know, if you're going to send enforcement warning letters out to people under *Kiser* and under *McKay*, then you -- you draw the risk, if you're -- if what you're doing and what you're regulating is speech, which is what is going on here, of one of these lawsuits challenging your actions.

THE COURT:  So --

MR. WIEST:  Judge, I do want to note --

THE COURT:  -- the flip side of what you're --

MR. WIEST:  -- for the record --

THE COURT:  Okay.  Go ahead.

MR. WIEST:  Yeah.  Letters were sent to the JCC on

1    behalf of both of these individuals that have said, this is

2    what we're doing.  This is what we've done factually, and if

3    this is not a violation, let us know.

4        In other words, disavow your intentions to enforce based

5    on this.  And they've received no response back, just as the

6    Court's received no response from Mr. Mando on that front.  I

7    think that's also relevant to the standing issue.

8        THE COURT:  All right.  And again, I hope I

9    summarized what your clients want to do.  They want to say

10   they're conservative Republicans, they want to advertise their

11   endorsements from groups, including Kentucky Right to Life or

12   Republican Party executives.  They want to be permitted to say

13   they're going to defend the rule of law and that they won't

14   engage in judicial activism -- and I've shorthanded that --

15   but those are the things that you have asked the Commission to

16   do in terms of disavowing enforcement action against your

17   client; is that correct?

18       MR. WIEST:  That is correct.  But I do want to just

19   make one qualification to that.

20       Mr. Fischer or Mr. Winter are not advertising the fact

21   and are not using the fact that they've been endorsed by

22   Republican Party executive committees all over the district.

23   It's a truthful statement, but they understand from *Winter*

24   that they're not allowed to do that.

25       THE COURT:  Okay.

1    MR. WIEST:  They are not asking to do that.  But they

2 have received those endorsements, they're not advertising them

3 or using them in the context of their campaign, but it is

4 their sense, having read these letters from the Judicial

5 Conduct Commission, Your Honor, that the JCC may want more of

6 them.  In other words, they want a public disavowal of those

7 endorsements, and that they're not inclined to do and they

8 don't want to do.

9    THE COURT:  Okay.  I misstated -- in trying to create

10 shorthand, I misstated your request.  You don't want to be

11 required to disavow endorsement of Republican Party executive

12 committee, have I correctly stated that?

13    MR. WIEST:  That is correct, Your Honor.

14    THE COURT:  So it looks to me like we're down to a

15 couple of things, whether this is, quote, a warning letter

16 that constitutes imminent enforcement, whether the failure to

17 disavow enforcement elevates the standing level.  And I do

18 think that what we have here with the public complaint process

19 does seem to have more of a chilling effect on free speech in

20 terms of the Judicial Conduct Commission's process that it

21 uses.

22   So based on what I see today -- and can you tell me this,

23 Mr. Mando, do you anticipate any action of any kind coming

24 from the Judicial Conduct Commission in the next 14 days?

25    MR. MANDO:  No.

1      THE COURT:  And so that would give us the opportunity

2  to brief and consider these things in the light of the case

3  law that's been cited here today and any other case law that

4  the Court might take into consideration; is that correct?

5      MR. MANDO:  Yes, ma'am.

6      THE COURT:  All right.  With that in mind, then, what

7  I would like to do is to have more briefing on this matter.

8  The questions raised in this case and the discussions that

9  we've had here today, I think we've pretty well covered what

10  my concerns are, and I think what both of your concerns are.

11  I don't know that we need a brief response and reply.  I think

12  what I'd like to have are cross briefs from both parties by

13  next Friday.

14     Would that give you enough time, Mr. Wiest?

15     MR. WIEST:  Your Honor, I would be happy to either do

16  that sooner or later.  I've got a fall trip scheduled out of

17  town with my spouse Thursday evening through Monday.

18     THE COURT:  Okay.

19     MR. WIEST:  But I could do it either before or after

20  that trip would be fine.

21     THE COURT:  Okay.  Mr. Mando, would you like before

22  or later?  It might be better to give you guys the weekend,

23  maybe get it done Monday or Tuesday of the following week, the

24  17th.

25     MR. MANDO:  Later would be better.  But talk about

1    difficult choices.  I start a week-long trial in Western

2    Kentucky with -- I mean, the other side identified 73

3    witnesses, we've got thousands of pages of documents, we start

4    on Monday, October 17th for a week.  Ms. Amlung is

5    eight-and-a-half months pregnant, and I'm -- with a due date

6    of October 26th, I hope I'm not disclosing too much.  So I

7    tend to think later would be better.

8        I am certain that the Commission would not do anything on

9    this matter until October --

10        THE COURT:  Well, they can't do anything until

11   October 28th since they've invited him to come in.

12        MR. MANDO:  Yeah, October 28th, they won't -- they

13   don't meet again until the 28th.

14        THE COURT:  All right.  Well, I don't want them on

15   October 29th doing something while we're still taking this up.

16   So I'm happy to go a little bit later, but if you want to do

17   this, I'll give you guys until October -- how long are you

18   going to be in trial, Mr. Mando?

19        MR. MANDO:  The entire week.

20        THE COURT:  Okay.  I don't have --

21        MR. MANDO:  But between Ms. Amlung and I, and my

22   other -- I've got Ms. Langen in my office who I think we put

23   on as entering an appearance, we will get it done, Your Honor.

24   I would like to ask maybe the 24th, would that be asking too

25   much?

1       THE COURT:  Why don't we say the 25th, I always hate

2   having things due on Monday, it just puts a lot of pressure on

3   everybody, you don't have your staff in your offices.

4       Mr. Wiest, is that okay with you?

5       MR. WIEST:  Your Honor, I'm always hesitant to tell a

6   federal judge that it's not okay.  We, I mean, there is this

7   sort of hanging over Mr. Winter and Mr. Fischer's head, which,

8   you know, notwithstanding my schedule, I'm always concerned

9   about a client that's received a letter like this that's

10  considering altering campaign-related activity in 30 days

11  before an election, which both of them are considering doing

12  in light of this.

13      You know, they view these threats as credible, and I

14  guess what I'd like to do, if it's okay with you, Your Honor,

15  I know Mr. Mando has got a trial, maybe we could expedite this

16  before and try to get the briefing on the 13th.

17      THE COURT:  Mr. Mando.

18      MR. MANDO:  If we're doing a cross briefing, Your

19  Honor, if I could ask, just strictly on the TRO; right?

20      THE COURT:  Yeah, on the TRO.  But what I want to

21  know, I'm sensitive to both of your positions here, but these

22  folks are in a campaign, and if the -- if they're going to get

23  the hammer dropped on them by the Commission, they deserve to

24  know that.  And then I deserve to know whether or not the

25  Commission is going to take these enforcement actions against

1    them.

2        It looks to me like they've asked some pretty simple

3    questions in their motion for a TRO.  Can they say that they

4    are conservative and Republican?

5        Can they accept and use in advertisements endorsements

6    from Right to Life?

7        Can they continue to indicate that they are committed to

8    the rule of law?

9        And will they not be required to disavow endorsements

10   that they've received?

11       Is everybody okay?  I'm hearing a lot --

12           MR. MANDO:  Yes, ma'am.

13           MR. WIEST:  Yes, ma'am.

14           THE COURT:  And if the Commission is willing to

15   disavow enforcement of those things, that seems like it's

16   pretty simple, they ought to be able to do that tomorrow.

17           MR. MANDO:  And I will have to discuss with the

18   client, but I don't believe that -- generally the Commission

19   does not give -- I mean, the rules say we have an obligation

20   to investigate.  The letter really is more just a request for

21   information.  This -- under their rules, they couldn't take

22   any action -- any public action for -- there's so many steps

23   they have to go through before we get to that stage.  And I'm

24   not sure if the Court finds that responsive or not.  I'm

25   trying to be direct with my answers.

1          THE COURT:  I know you are.  But everybody is between

2     a rock and a hard place on this case.  The thing about it is

3     is that what we need is prompt and swift action here, so that

4     everybody avoids running afoul of any kind of rule, and I

5     guess that's going to fall on me to do since the Commission

6     can't.

7          So what I'm going to do is take what we've said here

8     under advisement today.  I may try to get us back on the phone

9     early next week and see if we can't talk again.  And I'll tell

10    you, the kind of briefing I need is not going to be -- need

11    not be artful.

12         What I really need to know is whether *Kiser* controls and

13    *McKay* controls, whether the warning letters in *Kiser* and *McKay*

14    are similar to what we have here.

15         And I even thought about taking some evidence from

16    somebody on the Commission to tell me what their practices

17    are; what standards they apply.  Is this, in fact, a de facto

18    probable cause determination?

19         And if these folks don't appear on October 28th, is there

20    going to be some kind of a formal proceeding lodged against

21    them on October 29th after the Commission meets on the 28th?

22         So I do feel that I am compelled to act a little more

23    quickly than I would like to with respect to this matter.

24    And, Mr. Mando, I appreciate that you can't bind the

25    Commission here today.  I do feel like you've been direct with

1    me, but you're not able to give me the answers that I need.

2        So let me take these things that we've discussed today

3    under advisement and I'll either get out a written order or

4    maybe we'll reconvene by telephone at a time that's convenient

5    for you early next week.

6        At this point, I'm not going to issue a TRO because

7    Mr. Mando has indicated there will be no enforcement action in

8    the immediate future.  And I don't think that a few more days

9    is going to substantially prejudice Mr. Fischer or Mr. Winter.

10       So with that in mind, is there anything else anybody

11   wants to add for the greater good?

12       Mr. Wiest?

13           MR. WIEST:  No, Your Honor, we thank the Court for

14   the time.

15           THE COURT:  All right.

16       Mr. Mando?

17           MR. MANDO:  No, Your Honor, with one request.  I

18   would like -- I feel it's important, because the *McKay* and

19   *Kiser* cases were brought up, I feel compelled that we would

20   like to at least file something less than five pages, you

21   know, that address --

22           THE COURT:  I'd welcome both of you to do that by

23   Tuesday.  Just give me a case list with the holdings

24   synopsized underneath it.  Give me the point of what you

25   submit it for, what purpose and what point you submit it for,

27

1     and the holding in that case.  I'm going to go look them up

2     right now, but I think it's important for all of us to be well

3     informed on the law.  And so if you want to do that, both of

4     you can, get it to me by Tuesday.

5               MR. MANDO:  By Tuesday, yes, ma'am.

6               MR. WIEST:  Yes, ma'am.

7               THE COURT:  Well, thank you all very much, that

8     concludes this conference.  I appreciate your effort and

9     preparation.  We'll be off the record.

10              MR. MANDO:  Thank you, Your Honor.

11              MR. WIEST:  Thank you, Your Honor.

12         (Proceedings concluded at 2:43 p.m.)

13                              - - -

14                 C E R T I F I C A T E

15              I, ELAINE S. HABERER, RPR, certify that the
      foregoing is a correct transcript from the record of
16    proceedings in the above-entitled case.

17

18     _/s/ Elaine S. Haberer_              October 28, 2022
       ELAINE S. HABERER, RPR                Date of Certification
19     Official Court Reporter

20

21

22

23

24

25